# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| MONTARIO D. BOND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 22-1105-SHM-tmp |
| | ) | |
| MAGGIE CUNNINGHAM, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## ORDER MODIFYING THE DOCKET;
## DISMISSING THE COMPLAINT (ECF NO. 1) WITHOUT PREJUDICE;
## GRANTING LEAVE TO AMEND; AND
## DIRECTING BOND TO PROVIDE THE COURT WITH BOND'S CURRENT ADDRESS

---

On May 24, 2022, Plaintiff Montario D. Bond filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Bond was incarcerated at the Obion County Jail (the "Jail") in Union City, Tennessee, when he filed the complaint. (ECF No. 1 at PageID 2; ECF No. 1-1 at PageID 15.) On June 23, 2022, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA"). (ECF No. 5 (the "IFP Order").) The IFP Order notified Bond that, "[i]f [he] is transferred to a different prison or released, he [must] notify the Court immediately, in writing, of his change of address." (*Id.* at PageID 25.)

The complaint (ECF No. 1) is before the Court for screening pursuant to the PLRA.

The complaint alleges claims of (1) unconstitutional conditions of confinement and (2) unconstitutional segregated confinement. (*Id.* at PageID 3-4 & 6.) Bond sues: (1) Kent Treece, the Administrator of the Jail; (2) Kasye Kissell, a Captain at the Jail; and (3) Maggie Cunningham, a correctional officer at the Jail. (*Id.* at PageID 1-3 (Defendants (1) through (3) are referred to as

the "Individual Defendants").)  Bond sues the Individual Defendants in their official capacities. (*Id*. at PageID 2-3.)  Bond seeks: (1) termination of the Individual Defendants' employment at the Jail; and (2) compensatory damages.[1]  (*Id*. at PageID 6.)

The Clerk shall MODIFY the docket to add (1) Obion County, Tennessee and (2) the Obion County Sheriff's Office (the "OCSO") as Defendants.

For the reasons explained below: (1) the complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief; and (2) leave to amend is GRANTED.

## I.  FACTUAL BACKGROUND

Bond alleges that, as punishment for "3 inmates fighting" (referred to as the "Altercation"), the "[w]hole pod [was] lock[ed] down" on May 17, 2022.  (ECF No. 1 at PageID 4 & 6 (referred to as the "Lockdown").)  The plausible inference from the complaint is that the Lockdown began and ended on May 17, 2022.  (*See id*.)  Bond does not allege any injuries from the Lockdown.  (*See id*. at PageID 6 (leaving blank the "Injuries" section of the "Complaint For Violation Of Civil Rights" form).)  Bond alleges instead that the Lockdown was unfair.  (*See id*. (alleging that "it was not me fighting").)

The Court construes the complaint to allege claims of (1) unconstitutional conditions of confinement and (2) unconstitutional segregated confinement.

## II.  LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

---

[1]  Bond seeks "1100,00,000 [sic]." (ECF No. 1 at PageID 6.)  The Court construes Bond's request for relief to seek money damages in an amount that is unclear from the complaint.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Federal Rule of Civil Procedure 8 provides guidance on this issue. Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co*., 518 F.2d 1167, 1169 (6th Cir. 1975))).

## III.   REQUIREMENTS TO STATE A CLAIM UNDER § 1983

Bond sues under 42 U.S.C. § 1983. (ECF No. 1 at PageID 1.)[2] To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## IV.   ANALYSIS

### A.   Claims For Money Damages

#### 1.   Official Capacity Claims Against The Individual Defendants; Claim Against The OCSO; And Claim Against Obion County

(a) *The Individual Defendants*: Bond's official capacity claims against the Individual Defendants for money damages are construed as claims against the Individual Defendants' employer, the OCSO. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

(b) *The OCSO*: The Court construes Bond's claims against the OCSO as claims against Obion County because governmental departments and divisions, such as the OCSO, are not suable entities. *See generally Hafer v. Melo,* 502 U.S. 21 (1991). The OCSO is not a "person" subject to suit under § 1983. *See Dowdy v. Shelby Cnty. Sheriff's Office*, No. 18-2310, 2019 WL 3948110, at *2 (W.D. Tenn. Aug. 21, 2019); *Grace v. City of Ripley, Tenn.*, No. 2:16-cv-02395, 2017 WL 835206, at *5 (W.D. Tenn. Mar. 2, 2017) ("Since the Sixth Circuit's decision in *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit").

---

[2] Bond represents that he brings this lawsuit (a) against federal officials under *Bivens v. Six Unknown Fed. Agents*, 403 U.S. 388 (1971) and (b) against state or local officials under § 1983. (ECF No. 1 at PageID 3.) Bond misunderstands the nature of claims under *Bivens*, which provides a right of action against federal employees who violate an individual's rights under the United States Constitution. *See, e.g., Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010). Bond alleges that all of the Individual Defendants are employed by the Jail. (ECF No. 1 at PageID 2-3.) Accepting Bond's allegation as true for the purpose of screening under the PLRA, the Individual Defendants are state or local officials. Because the complaint does not name any federal employees as Defendants, the Court construes the complaint to allege claims only under § 1983.

(c) *Obion County*:  Obion County may be held liable only if Bond's alleged injuries were sustained pursuant to an unconstitutional custom or policy of Obion County.  *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92 (1978).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Bond does not allege facts describing any Obion County policy or custom, much less an unconstitutional policy or custom pursuant to which the Individual Defendants acted to deprive Bond of his constitutional rights.  Bond alleges instead that he was unfairly placed on Lockdown because other inmates were fighting.  (ECF No. 1 at PageID 4 & 6.)

Bond's claims against (1) Obion County, (2) the OCSO, and (3) the Individual Defendants in their official capacities are DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

## 2. Claim Of Unconstitutional Conditions Of Confinement Against The Individual Defendants In Their Individual Capacities

Even if the Court were to construe the complaint to allege claims against the Individual Defendants in their individual capacities, Bond's allegation that the Lockdown constituted unconstitutional conditions of confinement would not state a claim to relief.

Bond seeks to allege a claim of unconstitutional conditions of confinement under the Eighth Amendment. (ECF No. 1 at PageID 3.) He represents that he was a pretrial detainee at the time of the Lockdown. (*Id*. at PageID 5.) "[T]he Eighth Amendment does not apply to pretrial detainees[.]" *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 382 n.3 (6th Cir. 2004)). Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment. *Griffin v. Franklin Cnty., Ky.*, 975 F.3d 554, 566 (6th Cir. 2020). Bond's claim of unconstitutional conditions of confinement as pled is analyzed under the Fourteenth, not the Eighth, Amendment.

The Fourteenth Amendment's due process clause protects pretrial detainees from "punishment prior to an adjudication of guilt." *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell*, 441 U.S. at 539 (internal citations omitted). "So in other words, restrictions that amount to punishment may violate a pretrial detainee's substantive due process rights. But a defendant does not violate a pretrial detainee's rights if the defendant has a legitimate governmental objective for imposing the restrictions or conditions." *Patton v. Shelby Cnty. Sheriff's Office*, No. 2:20-cv-2438, 2021 WL 3891588, at *4 (W.D. Tenn. Aug. 31, 2021) (citing *Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991)).

A pretrial detainee can establish that a defendant subjected him to unconstitutional punishment by showing either (1) "an expressed intent to punish on the part of the detention facility officials," or (2) that "a restriction or condition is not rationally related to a legitimate government

objective or is excessive in relation to that purpose." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 717 (6th Cir. 2020) (citing *Bell*, 441 U.S. at 535; *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

The complaint is construed to allege that the Lockdown began and ended on May 17, 2022. (ECF No. 1 at PageID 4 & 6.)  The one-day Lockdown cannot plausibly be deemed excessive in relation to restoring the Jail's safety and security after the Altercation.  The complaint alleges no facts about the Altercation that would suggest the Lockdown was irrational or excessive.  Bond alleges, at most, that the Lockdown was an isolated incident intended to protect the safety of Jail personnel and inmates.  Bond does not allege that he suffered injury because of the Lockdown. He does not offer facts demonstrating that (1) the Individual Defendants imposed the Lockdown with an expressed intent to punish Bond or (2) the Lockdown was not rationally related to a legitimate governmental objective or was excessive in relation to that purpose.  It cannot be said, under the facts alleged in the complaint, that the Lockdown was "arbitrary or purposeless."  *See Bell*, 441 U.S. at 539.

Any claim of unconstitutional conditions of confinement against the Individual Defendants in their individual capacities is DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

### 3. <u>Claim Of Unconstitutional Segregated Confinement Against The Individual Defendants In Their Individual Capacities</u>

Even if the Court were to construe the complaint to allege a claim against the Individual Defendants in their individual capacities, Bond's allegation that the Lockdown constituted unconstitutional segregated confinement would fail to state a claim to relief.

A prisoner has no "inherent constitutional right to avoid … segregated housing." *Hill*, 630 F.3d at 469.  Mere placement in administrative segregation itself does not implicate protectible liberty interests under the Due Process Clause.  *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  An inmate does not have a constitutionally protected right to be given a particular

housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004); *Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002). For segregation to be actionable, an inmate must show that his segregated confinement rose to the level of "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008) (holding that "to implicate a cognizable liberty interest in the prison setting, ... the discipline must be unusual and substantial 'in relation to the ordinary incidents of prison life'") (quoting *Sandin*, 515 U.S. at 484). A plaintiff must demonstrate "restraint" that imposed an atypical and significant hardship. *Id.* at 790–91.

The duration of an inmate's segregated confinement is relevant to, but not solely determinative of, whether his confinement imposes atypical and significant hardship. *See Harden-Bey*, 524 F.3d at 795. The Sixth Circuit also considers the following factors, in their totality, when determining whether an inmate's segregation implicates a liberty interest by imposing atypical and significant hardship: (1) the reasons for an inmate's continued confinement in segregation; (2) the conditions of an inmate's confinement "'in relation to the ordinary incidents of prison life'"; and (3) the impact the confinement will have on the inmate's sentence. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin*, 515 U.S. at 472, 483); *see Jones v. Raye*, No. 12-6567, 2014 WL 10319865, at \*1–\*2 (6th Cir. June 3, 2014) (holding that the plaintiff-inmate's two-and-a-half-year confinement "may have been atypical," but was for "good reason" because he assaulted corrections officers).

The one-day Lockdown is insufficient to demonstrate atypical and significant hardship.[3] The brief duration of the one-day Lockdown is materially distinguishable from the length of

---

[3] *See*, *e.g.*, *Sandin*, 515 U.S. at 485 (concluding that the plaintiff's disciplinary segregation for thirty (30) days did not impose an atypical and significant hardship); *Joseph*, 410 F. App'x at 868 (finding that a sixty-one-day stay in administrative segregation was not atypical and significant); *Bradley v. Evans*, 229 F.3d 1150, 2000 WL 1277229, at \*5-7 (6th Cir. Aug. 23, 2000)

8

segregation where courts have found atypical and significant hardship. *See*, *e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (thirteen (13) years in administrative segregation gave rise to a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years in segregation was "atypical" and enough to implicate a liberty interest); *Baker*, 155 F.3d at 812 (approximately two and one-half years' confinement in segregation did not rise to level of "atypical and significant" hardship while plaintiff-inmate's participation in violent conduct inside the prison is investigated).

Even if Bond had alleged that he had lost privileges in the Lockdown, the law is well-settled in the Sixth Circuit that an inmate's temporary loss of privileges does not rise to the level of constitutional magnitude. *See Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).[4]  Bond does not allege that he was harmed by the conditions of the Lockdown.

Bond does not allege facts describing any of the conditions of the Lockdown, much less conditions that (1) differ "'in relation to the ordinary incidents of prison life'" or (2) differ from conditions experienced by other segregated inmates. *See Sandin*, 515 U.S. at 484, 487; *Baker*, 155

---

(fourteen (14) months of segregation did not constitute atypical and significant hardship); *Dunbar v. Barone*, 487 F. App'x 721, 724-25 (3d Cir. 2012) (eighteen (18) months of segregation did not constitute atypical and significant hardship); *Albiola v. Pugh*,  No. 4:14-CV-1645, 2015 WL 1915289, at *6 (N.D. Ohio Apr. 27, 2015) (a one-hundred-and-thirty-seven-day segregation did not constitute atypical and significant hardship); *Sturges v. Heyns*, No. 14-cv-14120, 2014 WL 7012671, at *3 (E.D. Mich. Dec. 11, 2014) ("Lockdown time and segregation for thirty days does not work a major disruption in a prisoner's environment").

[4]  *See also Dixon v. Morrison*, No. 1:13-cv-1078, 2013 WL 6512981, at *7 (W.D. Mich. Dec. 12, 2013) (holding that the plaintiff-inmate's temporary loss of privileges "was not atypical and significant"); *Durham v. Jeffreys*, No. 1:13-cv-226, 2013 WL 6147921, at *3 (S.D. Ohio Nov. 22, 2013) (holding that the plaintiff-inmate's one-hundred-day loss of recreational privileges and telephone use did not implicate a constitutionally protected liberty interest); *Johnson v. Vroman*, No. 1:06-CV-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (holding that the plaintiff-inmate's six-month restriction on telephone privileges did "not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life").

F.3d at 813.[5]  The complaint fails to allege facts demonstrating that the Lockdown placed "atypical and significant hardship on [Bond] in relation to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. at 484.

Any claim of unconstitutional segregated confinement against the Individual Defendants in their individual capacities is DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

### B.  Claims For Injunctive Relief

Bond is no longer confined at the Jail.  (*See* https://foil.app.tn.gov/foil/details.jsp (Bond is presently assigned to Union City Probation and Parole) (last accessed Apr. 6, 2023).)  The complaint's allegations seeking injunctive relief fail to state a claim to relief as a matter of law. (*See* ECF No. 1 at PageID 6 (seeking termination of the Individual Defendants' jobs at the Jail).)

"[A] prisoner plaintiff's release from custody generally renders requests for injunctive relief regarding his former confinement moot."  *Davis v. Parker*, No. 1:17-cv-0082, 2018 WL 2189751, at *2 (M.D. Tenn. Apr. 17, 2018) (citing *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010)).  "Any [injunctive] relief [that] could have been granted" in the case is moot because Bond is no longer confined at the Jail.  *See Quinn v. W. Mental Health Institute*, No. 14-1140, 2015 WL 541980, at *3 (W.D. Tenn. Feb. 10, 2015).  Bond's release from the Jail, *see* https://foil.app.tn.gov/foil/details.jsp, has "eradicated the effects of the alleged [constitutional] violation."  *Quinn*, 2015 WL 541980, at *3.

"Furthermore, there is no reasonable expectation that the alleged [constitutional] violation will recur", *see id.*, because Bond is no longer at the Jail.  "Under these circumstances, there is no

---

[5]  *See*, *e.g.*, *Argue v. Hofmeyer,* 80 F. App'x 427, 429 (6th Cir. 2003) *(*confinement in a cell for twenty-three (23) hours per day did not impose an atypical and significant hardship); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.3 (6th Cir. 1995) (confinement in disciplinary segregation for twenty-three (23) hours and ten (10) minutes per day did not implicate a liberty interest) (internal citation omitted).

basis for the [C]ourt to provide [Bond] with injunctive relief." *See Quinn*, 2015 WL 541980, at

*3; *see also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claims for injunctive

relief related to his conditions of confinement were moot when he was no longer confined at that

institution); *Penland v. Warren Cnty. Jail,* 759 F.2d 524, 526 n. 1 (6th Cir. 1985) (when plaintiffs

sought injunctive relief related to their confinement at a county jail, their release rendered their

claims moot); *J.P. v. Taft,* 439 F. Supp. 2d 793, 813 (S.D. Ohio 2006) (released inmate cannot be

awarded injunctive relief related to his conditions of confinement because "he cannot establish

that there is a reasonable likelihood that the allegedly wrongful acts will recur as to him", which

renders his claims moot).

"Further, the Court has no authority to direct that [the Jail] terminate [the Individual

Defendants'] employment as part of any final outcome in this case." *See Davis*, 2018 WL

2189751, at *2; *see also* ECF No. 1 at PageID 3.  Absent extraordinary and urgently compelling

reasons, District Courts do not intervene in the day-to-day operations of state correctional facilities.

Bond has not demonstrated extraordinary and urgently compelling reasons.

For the reasons explained above, Bond's claim for injunctive relief is DISMISSED

WITHOUT PREJUDICE for failure to state a claim on which relief can be granted.

## V.      AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint

to avoid a *sua sponte* dismissal under the PLRA.  *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir.

2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other

circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to

amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also*

*Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for

failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies

in the complaint must be afforded").  Leave to amend is not required where a deficiency cannot be

cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court grants leave to amend the complaint under the conditions set forth below.

## VI.    **CONCLUSION**

For the reasons set forth above:

A.    The complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE for failure to state a claim on which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)-(2).

B.    Leave to amend is GRANTED.  Amended claims must be filed within twenty-one (21) days after the date of entry of this Order.  An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Bond's claims.  An amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings.  Bond must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count.  If Bond fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice and enter judgment.  The Court recommends that any such dismissal should be

treated as a strike pursuant to 28 U.S.C. § 1915(g).  *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021).

        C.      Bond is ORDERED to notify the Court in writing, within twenty-one (21) days of the date of entry of this Order, of Bond's present address.  (*See* https://foil.app.tn.gov/foil/details.jsp (last accessed Apr. 6, 2023).)  If Bond fails to abide by this or any other provisions of this Order, the Court may impose appropriate sanctions, up to and including dismissal of this action, without any additional notice or hearing by the Court.

        IT IS SO ORDERED, this 7th day of April, 2023.

                          /s/ *Samuel H. Mays, Jr.*
                          SAMUEL H. MAYS, JR.
                          UNITED STATES DISTRICT JUDGE